# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KEURIG DR PEPPER IN. AND DR PEPPER/SEVEN UP, INC. | § § § | |
| | § | Civil Action No. 4:19-CV-505 |
| v. | § | Judge Mazzant |
| | § | |
| JOHN CHENIER | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiffs Keurig Dr Pepper Inc. and Dr Pepper/Seven Up, Inc.'s Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. #8). Plaintiffs ask the Court to temporarily restrain Defendant John Chenier from allegedly continuing to act in contravention of binding restrictive covenants and from misappropriating Plaintiffs' trade secrets and confidential information. The Court, having reviewed Plaintiffs' Application, finds that a temporary restraining order should be issued.

## BACKGROUND

Plaintiffs Keurig Dr Pepper Inc., through its subsidiaries such as Dr Pepper/Seven Up, Inc., and the American Bottling Company (collectively, "KDP"), is engaged in the business of beverage manufacturing and distribution throughout the United States and the world. A part of KDP's business also entails partnering with emerging brands to distribute beverage on their behalf. KDP employs a series of highly qualified and talented employees to work with varying customers around the world to ensure that KDP's diverse lineup of beverages— as well as those brands with which KDP partners—are stocked within a store and featured in locations in which its products would be more likely to be purchased. Defendant John Chenier has worked in the Consumer Packaged Goods ("CPG") industry for over thirty years and has been employed by

some of the nation's top brands, including Pillsbury Company, The Clorox Company, Danone S.A., Schwans Consumer Brands, ARYZTA, KDP, and, currently, BodyArmor.

In July 2017, KDP hired Chenier as a Sales Director Bentonville, Arkansas area and with attention to the Wal-Mart/Sam's Club account. On September 1, 2017, KDP presented Chenier with a Grantee Acknowledgement and Agreement, through which he was granted a restricted stock unit award (a "RSU Award") valued at over $15,000.00. KDP alleges that in consideration for the RSU Award, Chenier was required to electronically consent to an Omnibus Stock Incentive Plan, the RSU Agreement, Employee Confidentiality and Non-Competition Agreement, and a Mutual Arbitration Agreement. From the initial September 2017 award until March 2019, KDP presented Chenier with a total of four RSU Awards valued over $600,000.00, which KDP alleges were given in consideration of, and contingent on, Chenier signing and agreeing to be bound by an Employee Confidentiality and Non-Competition Agreement and a Mutual Arbitration Agreement (collectively, the "Agreements"). In November 2018, Chenier was promoted to Vice President, Sales, assigned to Wal-Mart. KDP alleges that during the time Chenier was in its employ, it provided him with bonuses, stock, access to KDP's sensitive confidential and trade secret information, and direct access to Wal-Mart.

During Chenier's employment, KDP contracted with BodyArmor to distribute BodyArmor's sports drink. Chenier worked directly with BodyArmor to help it promote its brand with Wal-Mart. In August 2018, BodyArmor terminated its distribution relationship with KDP and began a distribution relationship with Coke.

Chenier contends that after a KDP merger, he became insecure about dissatisfied about his role in the company and contemplated other employment. In Spring 2019, Chenier accepted a job with BodyArmor to serve as its Vice President of Sales for Wal-Mart/Sam's Club. On June

6, 2019, Mr. Chenier notified his supervisor at KDP Sean Cronican of his intent to resign. Cronican advised Chenier that a non-competition agreement prohibited Chenier from working with BodyArmor for one year. Chenier contends that he does not recall signing any non-competition agreement.

Upon learning that Chenier took a similar position with BodyArmor, KDP retained an outside expert to forensically image Chenier's KDP-issued computer. KDP alleges that the results of the forensic imaging show the following:

> Chenier has misappropriated KDP's trade secrets by: (a) downloading sensitive, trade secret information directly from KDP's server onto external media devices; (b) inserting and retaining at least 19 external media devices; (c) emailing KDP confidential information to his personal email accounts; and (d) connecting to BodyArmor's WiFi network on his KDP-issued laptop on June 3, 2019, and, from there, apparently presenting to BodyArmor a highly confidential KDP pitch proposal that KDP was planning on presenting to Wal-Mart the following week.

(Dkt. #1 at p. 3).

On July 10, 2019, KDP filed a complaint (Dkt. #1) against Chenier in the United States District Court for the Eastern District of Texas alleging breach of contract and actual and threatened misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA") and the Defend Trade Secrets Act ("DTSA"). KDP contends that Chenier's employment with BodyArmor, and specifically as it relates his contact with Wal-Mart, is in breach of covenants not to compete and solicit/interfere.

On July 16, 2019, KDP filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. #8) asking that the Court enter an Order providing the following relief:

> A. Temporarily and preliminarily enjoin Chenier from directly or indirectly providing Competitive Services in the Restricted Area for BodyArmor;
> B. Temporarily and preliminarily enjoining Chenier from interfering, soliciting, servicing, or making proposals to Walmart;

C. Temporarily and preliminarily enjoin Chenier and all parties in active concert or participation with him or receiving notice of any injunction, from using or disclosing any of KDP's confidential or trade secret information;

D. Order Chenier and all parties in active concert or participation with them or receiving notice of any injunction, to return to KDP all originals and copies of all files, devices and/or documents that contain or relate to KDP's confidential or trade secret information, including without limitation, all computers, electronic media, PDA's, and electronic storage devices;

E. Award KDP such other relief as the Court may deem just and proper;

F. Set a date for a Preliminary Injunction Hearing.

(Dkt. #8 at p. 15). On July 23, 2019, Chenier filed a response (Dkt. #15). On July 24, 2019, KDP filed a reply (Dkt. #16).

On July 25, 2019, the Court held a hearing on KDP requests for a temporary restraining order. As set herein, the Court considers whether to temporarily restrain Chenier in the manner proscribed above until the evidentiary hearing on KDP's request for a preliminary injunction, which is currently set for September 16–17, 2019.

## LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d). A plaintiff seeking a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

**ANALYSIS**

I.     **Likelihood of Success on the Merits**

KDP asserts claims for misappropriation of trade secrets under the TUTSA and DTSA and a breach of contract—specifically, a non-compete provision and non-solicitation/interfernce provision. For the Court to grant a temporary restraining order, KDP must first demonstrate a substantial likelihood of success on the merits. This requires a movant to present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). A prima face case does not mean KDP must prove that it is entitled to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009)

A.  **Misappropriation of Trade Secrets Claims**

KDP alleges that Chenier unlawfully downloaded KDP's trade secrets, sent them to his personal email address, improperly used KDP trade secrets to solicit Wal-Mart on behalf of BodyArmor, and presented a KDP pitch presentation to Wal-Mart. Further, KDP argues that because Chenier holds a substantially similar position with BodyArmor that he did with KDP, Chenier has used and will continue to use KDP confidential information.

Chenier argues that KDP has failed to identify a trade secret or other piece of confidential information misused or misappropriated. That is, Chenier avers, KDP has simply forwarded a theory of misappropriation that is based on speculation, conjecture, misleading due to a false nefarious spin on innocuous actions. Further, Chenier contends that KDP falsely dressing up documents that are not confidential trade secrets to its detriment and to the benefit of BodyArmor.

To prevail on a trade secret misappropriation claim under Texas law, "a plaintiff must show: '(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff.'"*CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009) (quoting *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 376 (5th Cir. 1999)).

### 1. KDP has made a Prima Facie Case that a Trade Secret Existed

KDP alleges that Chenier, without authorization, downloaded its trade secret on multiple thumb drives. Specifically, KDP alleges that Chenier inserted, and currently retains information from, nineteen thumb drives, which include information pertaining to

> KDP's national account information for Walmart and Sam's Club, for all KDP product offerings, whether such products are manufactured by KDP or distributed by it, including volume of product in stores as well as projected volume, revenue and projected revenue, and sales income earned after discounts applied and projected sales income earned after discounts applied; (ii) Walmart and Sam's Club sales across the all drink segment categories, current through May 19, 2019; (iii) information that KDP purchases at significant cost from a third-party vendor, identifying all beverage product lines sold at Walmart, including KDP and other competitors, including sales trends and data, current through May 26, 2019.

(Dkt. #8).

Chenier argues that KDP fails to identify any trade secret information that was allegedly misappropriated. TUTSA defines a trade secret as

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac & Rem. Code Ann. § 134A.002(6).

At this stage, the Court is not required to, and does not, determine if information at issue is, in fact, a trade secret; the Court considers only "whether the applicant has established that the information is entitled to trade-secret protection until the trial on the merits." *Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.). Courts have defined a trade secret as "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (quoting *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996)). To aid it their inquiry as to whether a trade secret exists under Texas law, courts examine

(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d at 739. "Items such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have been shown to be trade secrets." *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd*)* (citations omitted).

Here, KDP provides evidence that the information downloaded on the thumb drives is significantly similar, if not identical, to the types of information that Texas courts have found to be trade secrets. Further, Chenier does not dispute that the thumb drives contain the information

that KDP purports; instead, Chenier argues only that KDP has not identified a trade secret that was misused or misappropriated.

Thus, the Court concludes that KDP has sufficiently shown a likelihood that the information that Chenier downloaded qualifies as a trade secret for purposes of this preliminary injunction analysis.

### 2. KDP has made a Prima Facie Showing that the Trade Secret was Acquired Through a Breach of a Confidential Relationship or Discovered by Improper Means

KDP alleges that upon learning that Chenier took a similar position with BodyArmor, KDP retained an outside expert to forensically image Chenier's KDP-issued computer, which revealed that Chenier improperly download a number of KDP's documents. Chenier argues that he did not intend to download any confidential information or trade secrets.

TUTSA defines "misappropriation," in pertinent part, as follows:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who:
(i) used improper means to acquire knowledge of the trade secret;
(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
(a) derived from or through a person who used improper means to acquire the trade secret;
(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or
(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret . . . .

Tex. Civ. Prac & Rem. Code Ann. § 134A.002(3)(A)(B). Further, "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(2) (emphasis added).

KDP presented a wealth of circumstantial evidence that strongly indicates Chenier acquired its trade secret by improper means. Indeed, KDP presented evidence that results the forensic imaging of Chenier's computer showed the following:

> a. Starting on April 29, 2019, 19 separate USB devices were inserted into Chenier's KDP issued computer, with 15 of those insertions occurring during the week prior to Chenier resigning his KDP employment.
> b. Chenier opened a number of files from an external media device on his KDP-issued laptop, with such files containing or constituting KDP's trade secret or confidential information.
> c. Chenier emailed KDP information to his personal email account during the last week of his KDP-employment, which show that Chenier began soliciting Walmart on BodyArmor's behalf before he resigned from KDP.
> d. Chenier's KDP-issued laptop was connected to BodyArmor's WiFi network on June 3, 2019, the same day on which Chenier opened a highly confidential KDP document, outlining a pitch proposal that KDP actually ended up giving to Walmart on June 13th. In the pitch proposal, KDP outlined its product growth strategy for certain non-carbonated beverages, which compete with BodyArmor's own offerings.

(Dkt. #8 at p. 8). Further, KDP contends that Chenier did not have permission to download the information and had access to the confidential information and trade secrets only through a confidential relationship arising from his position as Vice President of Sales.

The Court finds that KDP has sufficiently made a prima facie showing that Chenier acquired its purported trade secrets through improper means and a breach of a confidential relationship.

### 3. KDP has made a Prima Facie Showing that Chenier used the Trade Secret without Authorization from KDP

"As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018) (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013)).

KDP alleges that its forensic imaging results show that

(1) Chenier emailed KDP information to his personal email account during the last week of his KDP-employment, which shows that Chenier began soliciting Wal-Mart on BodyArmor's behalf before he resigned from KDP; (2) Chenier's KDP-issued laptop was connected to BodyArmor's WiFi network on June 3, 2019, the same day on which Chenier opened a highly confidential KDP document, outlining a pitch proposal that KDP actually ended up giving to Walmart on June 13th; and (3) in the pitch proposal, KDP outlined its product growth strategy for certain non-carbonated beverages, which compete with BodyArmor's own offerings.

In response, Chenier provided sworn testimony that he has not used and will not use any confidential KDP information in the course of his work for BodyArmor and that at no point during his KDP employment did he access or download confidential KDP materials to use in post-KDP employment. Chenier further provided sworn testimony from BodyArmor manager Jeff Sevcik, who was responsible for hiring Chenier. Mr. Sevcik testified, in summary, that BodyArmor had no interest in any KDP confidential information that Chenier may have and instructed Chenier that he is prohibited from using or disclosing any KDP information in the course of his work at BodyArmor.

At this stage, the Court is not in a position to weigh the credibility of the evidence. Moreover, courts have echoed that "'[p]roof of trade secret misappropriation often depends upon circumstantial evidence.'" GE Betz, 885 F.3d at 326 (5th Cir. 2018) (alteration omitted) (quoting *Sw. Energy Prod. Co. v. Berry-Helfand,* 411 S.W.3d 581, 598 (Tex. App—Tyler 2013) *rev'd on other grounds*, 491 S.W.3d 699 (Tex. 2016)). KDP has provided extensive circumstantial evidence that Chenier used its confidential information and/or trade secrets in connection with obtaining employment with BodyArmor, which is further substantiated by his position as, like with KDP, Vice President of Sales with a focus on Wal-Mart.

The Court notes that Chenier and his counsel have certified that any information that Chenier downloaded has been turned over to counsel and is not in Chenier's possession. In the

current situation, however, this does not alleviate, in its entirety, the propriety of a temporary restraining order.  First, in light of KDP making a prima facie case that Chenier misappropriated its trade secrets, the Court does not find it judicious to appease wrongful conduct by accepting on good faith that all KDP documents were turned over to counsel and that Chenier no copies were made.  Further, courts have recognized the need for injunctions in these situations—when former employee with knowledge of confidential information and trade secrets took similar job working for competitor.  *See Baker Petrolite Corp. v. Spicer*, Civ.A. No. 06–1749, 2006 WL 1751786, at *9–10 (S.D. Tex. June 20, 2006); *see also FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504–05 (5th Cir. 1982) ("The fact that a single trade secret may be disclosed is enough.") (citing *In Weed Eater, Inc. v. Dowling*, 562 S.W.2d 898, 902 (Tex. Civ. App.—Houston 1978, writ ref'd n.r.e.)).

The Court finds that has sufficiently presented a prima facie case for misappropriation of trade secrets and is likely to succeed on the merits of this facet of its misappropriation of trade secrets claim.

### KDP has made a Prima Facie Case for Injunctive Relief due to Threatened Misappropriation under TUTSA

TUTSA provides that "[a]ctual or threatened misappropriation may be enjoined if the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.003(a).

"[T]o establish threatened disclosure, the law requires [Plaintiff] to show disclosure of specific trade secrets would benefit [an employee's new employer]." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, No. A-14-CA00877-SS, 2015 WL 11438611, at *3 (W.D. Tex. Oct. 30, 2015) (citing *Conley v. DSC Commc'ns Corp.*, No. 05-98-01051-CV, 1999 WL 89955, at *3 (Tex. App.—Dallas Feb. 24, 1999, no pet.)) In *Conley*, the court noted:

Certain duties, apart from any written contract, arise upon the formation of an employment relationship. One of those duties forbids an employee from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer. This obligation survives termination of employment. Although this duty does not bar use of general knowledge, skill, and experience, it prevents the former employee's use of confidential information or trade secrets acquired during the course of employment.

1999 WL 89955, at *3 (citations omitted) (emphasis added).

Accordingly, it is proper for courts to enter an injunction upon a showing that a defendant probably, rather than, in fact, disclosed trade secrets. *See TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) (citing *Cardoni v. Prosperity Bank*, 805 F.3d 573, 590 (5th Cir. 2015). "Such a showing can be made by proving that a defendant is 'in possession of the information and is in a position to use it.'" *TFC Partners*, 2019 WL 369152, at *3 (quoting *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App.—Fort Worth 2003, no pet.).

KDP argues that Chenier's use of its trade secrets has already benefited BodyArmor, evidenced by its relationship Wal-Mart through Chenier. KDP contends that if Chenier is not restrained from using and continues to use its trade secrets, KDP stands to further lose millions in business, as well as goodwill, customer relations, and an erosion of its standing in the market. In light of the breadth of circumstantial evidence set forth above, the Court finds that KDP has made a prima facie case for injunctive relief for threatened misappropriation of its trade secret under TUTSA.

## B. Breach of Contract

KDP asserts that Chenier is in acting in contravention of his post-employment obligations and seeks to enforce the Agreement's non-compete provision and non-solicitation provision. Chenier argues that (1) KDP fails to provide evidence that he signed, and he does not recall

seeing, the Agreements and therefore he is not bound; (2) even if he is bound by the Agreements, he is in breach of neither the non-compete provision nor the non-solicitation provision because BodyArmor is not a competitor of KDP; and (3) if the restrictive covenants are interpreted to prevent Chenier from selling BodyArmor sports drink to Wal-Mart, it would be unenforceable as being overbroad, unreasonable, and serving no legitimate business purpose.

Under Texas law, the essential elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Texas Business and Commerce Code § 15.50 governs the enforceability of non-compete covenants and provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

The Court must therefore determine whether KDP has sufficiently shown that (1) the non-compete provision and non-solicitation provision are ancillary to or part of an otherwise enforceable agreement and (2) the restrictions set therein are reasonable.

### 1. Ancillary to or Part of an Otherwise Enforceable Agreement

Courts in Texas engage in a "two-step inquiry to determine this threshold requirement for enforceability under the Act. First, we determine whether there is an 'otherwise enforceable agreement' between the parties, then we determine whether the covenant is 'ancillary to or part of' that agreement." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 770 (Tex. 2011) (citing *Mann*

*Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009). Chenier challenges the first prong test and argues that the Agreements are not enforceable because KDP fails to prove that he signed them.

### a. The Agreements are Enforceable

KDP alleges that Chenier received hundreds of thousands of dollars worth of restricted stock units, which acceptance of mandated that he agree to post-employment restrictive covenants, including non-competition, non-solicitation, and confidentiality agreements Chenier argues that KDP has failed to present any evidence that he signed the Agreements and, in fact, that he does not recall ever seeing them. KDP avers that Chenier was required to agree to be bound by the Agreements in return for each award of restricted stock units, evidenced by Chenier's electronic signature.

KDP sent Chenier a letter that stated:

You have been selected to receive a restricted stock unit award (the "RSU award"). In order to receive the RSU award you must by October 6, 2017 acknowledge that you understand and/or agree to be bound by certain agreements with Dr Pepper Snapple Group, otherwise, you will forfeit your RSU award.

Beginning September 4, 2017, you will be able to log onto the Morgan Stanley Smith Barney website at www.stockplanconnect.com. You will be asked to check a box that you have read the following documents:

Employee Confidentiality and Non-Competition Agreement (the "Non-competition Agreement") . . . . [I]f you are a resident of the United States in a state that prohibits, precludes or limits the enforceability of all or any particular provisions of the Non-competition Agreement, then the applicability of the provisions of the Non-competition Agreement to the residents of that state is limited to those provisions that are enforceable.
. . . .
By checking the box that you have read all the above referenced documents and entering your electronic signature, you:
. . . .
if you are a resident of the United States, agree to be bound by the terms and conditions of the Omnibus Plan, the RSU Agreement, the Non-competition Agreement and the Arbitration Agreement. Provided however, if you are resident

in a state that prohibits, precludes or limits the enforceability of all or any particular provisions of the Non-competition Agreement, then those provisions shall not be enforceable against you.

KDP provides evidence that before Chenier could receive KDP stock, Chenier was required to use his unique login credentials to access and accept the Agreements. Lastly, KDP provides evidence that Chenier accepted the RSU Awards. In Texas this is sufficient to bind Chenier to the Agreements.

Neither Parties do not disputes that Texas law permits electronically signing a contract. The Uniform Electronic Transactions Act ("UETA") states that an "electronic signature" can be "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Tex. Bus. & Com. Code § 322.002(8). Moreover, courts have held enforceable agreements entered into by, as in the present action, checking a box. *See e.g. GC Servs. Ltd. P'ship, v. Little*, 2019 WL 2647690, at *3– 4 (S.D. Tex. June 27, 2019); *Holmes v. Air Liquide USA LLC*, No. H-11-2580, 2012 WL 267194, at *3 (S.D. Tex. Jan. 30, 2012); *Buckhalter v. J.C. Penney Corp.*, No. 3:11-cv-752-CWR-FKB, 2012 WL 4468455, at *2 (S.D. Miss. Sept. 25, 2012). Here, Chenier was required to login using credential personal to him and accept the RSU Awards by acknowledging and agreed—evidenced by clicking a box—that he would be bound by the covenant not to compete, solicit, or interfere set forth therein. Chenier's argument that he does not recall seeing the non-compete and non-solicitation provision is not compelling under Texas—or a general understanding of—contract law.

### b. The Non-Competition covenant and the Non-Solicitation Covenant are Ancillary to the Agreements

A covenant is ancillary to or part of an agreement if it satisfies a two-prong test: (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the

employer's interest in restraining the employee from competing, and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Valley Diagnostic Clinic, P.A. v. Dougherty*, 287 S.W.3d 151, 155 (Tex. App.— Corpus Christi 2009, no pet.). As explained above, KDP gave Chenier hundreds of thousands of dollars in exchange for Chenier's promise to adhere to certain post-employment restricts, including the non-compete covenant and the non-solicitation covenant.

### 2. The Restriction are Reasonable and Chenier is in Breach

#### a. The Non-Competition Provision

Under Texas law, "[a]n agreement not to compete is in restraint of trade and therefore unenforceable on grounds of public policy unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990). Whether a covenant not to compete is reasonable presents a question of law. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004).

The Texas Business and Commerce Code § 15.51 provides:

> If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed . . . .

In sum, the restrictions in a non-compete covenant—geographic restrictions, duration, and scope—must all be reasonable.

With these guiding principles, the Court considers the language of the non-compete covenant, by which Chenier agreed that during his employment with KDP and for a period of one year following the termination of his employment, he would not "directly or indirectly,

provide Competitive Services in the Restricted Area for a Competitor." (Dkt. #1, Ex. 5 at p. 4). The Agreements provides that "Competitive Services" means "services that are the same as or of a similar or comparable type and character to those provided by Employee to Company during the Look Back Period." (Dkt. #1, Ex. 5 at p. 4). A "Competitor" is considered "any person or entity that competes with those parts of the business of the KDP Business as to which Employee provided services, had material involvement, or received Confidential Information during the Look Back Period . . . ." (Dkt. #1, Ex. 5 at p. 4). The "Look Back Period" is calculated as "the last twenty-four (24) months of Employee's employment with the Company." (Dkt. #1, Ex. 5 at p. 4). Finally, "Restricted Area" means "those territories and/or regions in which Employee had responsibilities and/or about which Employee had Confidential Information during the Look Back Period. For all other employees (meaning those employees who have responsibilities and/or confidential information concerning the Company's operations as a whole), Restricted Area means those geographic areas in which the Company is engaged in manufacturing, selling, distributing, and/or marketing its products during the Look Back Period." (Dkt. #1, Ex. 5 at p. 4).

First, it is not disputed that the Agreement's limitations as to time and geographical area are reasonable. As the present non-competition agreement does, "Texas courts generally enforce covenants that are restricted to the geographic territory within which the bound employee worked during his employment." *Merritt Hawkins & Associates, LLC v. Gresham (Hawkins II)*, 79 F. Supp. 3d 625, 634 (N.D. Tex. 2015) (citing *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.)); *Evan's World Travel Inc. v. Adam*s, 978 S.W.2d 225, 232–33 (Tex. App.—Texarkana 1998, no writ). Also, the one-year restraint under these circumstances is reasonable. Indeed, Texas courts routinely uphold restricts

of two-years, or even more. *See, e.g., Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 790–91 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Property Tax Assocs., Inc. v. Staffeldt,* 800 S.W.2d 349, 351 (Tex. App.—El Paso 1990, writ denied).

The gravamen of Chenier's challenge to the covenants is focused on the scope of activity. Chenier maintains that he is not in breach the Agreements because BodyArmor is not considered a "Competitor" as defined by the Agreements. Specifically, Chenier argues that BodyArmor Super Drink is a sports drink with which KDP, whose brands include coffees, carbonated soft drinks, teas, water, and juices, does not compete. And, to read the Agreements in such a manner, Chenier argues, would render the covenants unenforceable as overbroad, in violation of Texas public policy. To support its position, Chenier forwards (1) KDP's 2018 Annual Report filed with the SEC, which lists KDP's competitors and does not include BodyArmor; and (2) the list of nineteen competitors specifically referenced in the non-competition clause, which does not include BodyArmor. The Court disagrees with Chenier's narrow interpretation of a "Competitor," as define by the Agreements.

First, neither the SEC filing nor the non-competition provision provides an exhaustive list of KDP's competitors. Indeed, the non-competition provision itself qualifies the list as "not limited to." Further, the language of the Agreements and conduct of the parties undoubtedly considers BodyArmor to be a competitor. KDP provides evidence, which Chenier does not dispute, that before Chenier terminated his employment, KDP held a meeting contemplating how to better compete with manufactures such as BodyArmor. Further, as KDP has cited to, courts in Texas do not require competitors to offer the exact same products and services to enforce a covenant not to compete. At this preliminary stage, BodyArmor is a Competitor as defined by

the agreements and this does not render the non-compete provision unenforceable as overly broad.[1]

### b. The Non-Solicitation/Interference Provision

Under the Agreements, Chenier is not allowed to "interfere with the relationship of the Company with any person or entity who was a customer of the Company as to which Employee had business-related dealings or about which Employee received Confidential Information during the Look Back Period" and (b) solicit, communicate with, or induce or encourage a "Covered Customer" to: "(a) stop or reduce doing business with Company; or (b) to buy a Competing Product from a Competitor . . . ." A "Covered Customer" is defined as "a customer of the Company as to which Employee had business-related dealings or about which Employee received Confidential Information during the Look Back Period."

Chenier argues that he is not in breach of the non-solicitation/interference provision because BodyArmor does not offer a product that competes with KDP. As discussed above, the Court rejects this argument. Further, for the reasons stated above, the Court finds that the non-solicitation provision is reasonable and Chenier, by working with Wal-Mart in his capacity with BodyArmor, is in breach.

## II.    Irreparable Harm

KDP must demonstrate they it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22, 129 S. Ct. 365.

---

[1] The Court notes that while it has made a preliminary determination that BodyArmor is a Competitor under the Agreements, the Court will consider further argument on this point at the preliminary injunction hearing set before the Court.

KDP argues that it stands to lose millions in business, as well as goodwill, customer relations, and an erosion of its standing in the market. "In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." *A & A Global Indus., Inc. v. Wolfe*, CIV.A. 3:01CV1515–D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001) (quoting *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996)); *see also Traders Int'l, Ltd. v. Scheuermann*, Civ.A. No. H–06–1632, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006) (the "substantial possibility" that a defendant's solicitation of his former employer's customers would cause the former employer to lose the customers' business satisfied the requirement of irreparable injury).

The Court finds that KDP has made a sufficient showing of irreparable harm.

## III. Balance of Harms

The threatened injury to KDP if a temporary restraining does not issue outweighs any potential harm caused to Chenier. Chenier's continued wrongful conduct will result in KDP facing a substantial risk of losing customers it otherwise would have had and an erosion of its goodwill, losses that are difficult or impossible to quantify by monetary damages.

The Court does not attempt to articulate, or even suggest, that Chenier will not be harmed by being temporarily restrained. Mr. Chenier would functionally be prohibited from working at BodyArmor because of it alleged business model focused on only one product. The Court notes, however, that Chenier held a high level position in KDP and executed the Agreements securing hundreds of thousands of dollars in restricted stock units in exchanged for his promise to comply with certain restrictive covenants. The Court does not find substantial harm in temporarily restraining Chenier until the preliminary injunction hearing before the Court currently set for September 16, 2019. Moreover, as demonstrated his employment history, Chenier is not

prevented from pursuing a host of other employment possibilities in CPG Industry. A balancing of the equities favors granting of the temporary restraining order.

## IV.    Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. This factor overlaps substantially with the balance-of-hardships requirement. *Id*. "The purpose of an injunction is to remove the advantage created by the misappropriation." *Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 263 (Tex. App.—Dallas 2014, no pet.) (citing *Bryan v. Kershaw*, 366 F.2d 497, 502 (5th Cir. 1966)). Indeed, "the undoubted tendency of the law has been to recognize and enforce higher standards of commercial morality in the business world." *Id*. (quoting *Hyde Corp. v. Huffines*, 158 Tex. 566, 581–82, 314 S.W.2d 763, 773 (1958)). Here, a temporary restraining order serves the public interest by depriving Chenier of the benefit of the allegedly misappropriated trade secret and, in so doing, enforces better business ethics by depriving the alleged wrongdoers of the benefit of their wrongdoing.

Further, a temporary restraining order under the present circumstances will not disserve the public interest. To the contrary, it is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law. *AmeriSpec, Inc. v. Metro Inspection Servs., Inc.*, CIV.A. 3:01–CV–0946–D, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001) (granting injunction based on non-competition agreement, finding that "[i]t is in the public interest [under Texas Law] to uphold contracts and to enforce a remedy to which the parties have expressly agreed"). Thus, the Court finds that a temporary restraining order will only serve the public interest.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiffs Keurig Dr Pepper Inc. and Dr Pepper/Seven Up, Inc.'s Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. #8) is hereby **GRANTED**.

It is further **ORDERED**:

(1) Chenier is temporarily restrained from directly or indirectly providing Competitive Services in the Restricted Area for BodyArmor;

(2) Chenier is temporarily restrained from interfering, soliciting, servicing, or making proposals to Wal-Mart;

(3) Chenier and all parties in active concert or participation with him or receiving notice of any injunction are temporarily restrained from using or disclosing any of KDP's confidential or trade secret information; and

(4) Chenier and all parties in active concert or participation with them or receiving notice of any injunction, shall return to KDP all originals and copies of all files, devices and/or documents that contain or relate to KDP's confidential or trade secret information, including without limitation, all computers, electronic media, PDA's, and electronic storage devices.

It is further **ORDERED** that this Temporary Restraining Order shall not be effective unless and until KDP files an appropriate bond in the amount of $1,000.

**SIGNED this 22nd day of August, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE